UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| WENDY WYLER | : | CIVIL ACTION NO. |
| | : | 3:12-CV-00097(RNC) |
| | : | |
| Plaintiff | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CONNECTICUT STATE UNIVERSITY SYSTEM, | : | |
| SOUTHERN CONNECTICUT STATE UNIVERSITY, | : | |
| DAVID CHEVAN, STANLEY BATTLE AND | : | |
| JONATHAN IRVING | : | |
| | : | |
| Defendants | : | June 6,  2012 |

## FIRST AMENDED COMPLAINT

**A. PARTIES**

1.      Plaintiff, **WENDY WYLER** ("**PLAINTIFF**"), at all material times
mentioned in this Complaint, was a resident of Weston, Connecticut.

2.       Defendant **CONNECTICUT STATE UNIVERSITY SYSTEM,** at all
material times mentioned in this Complaint, was a public university and non-profit
organization operating in part, on received federal grants and loans, and existing under
the laws of the State of Connecticut with its system office located at 39 Woodland Street
Hartford, CT 06105.

3.       Defendant **CONNECTICUT STATE UNIVERSITY SYSTEM,** at all
material times herein, consisted of four comprehensive universities in Connecticut

including, but not limited to, Defendant **SOUTHERN CONNECTICUT STATE UNIVERSITY**, located at 501 Crescent Street, New Haven, CT 06515.

4. Together, Defendants **CONNECTICUT STATE UNIVERSITY SYSTEM** and **SOUTHERN CONNECTICUT STATE UNIVERSITY** will hereinafter be referred to as Defendant **"UNIVERSITY."**

5. **PLAINTIFF,** at all material times herein, was a student at Defendant **UNIVERSITY.**

6. Upon information and belief, Defendant **UNIVERSITY'S** duties, included but were not limited to, determining the general policy of the university system, appointing the chancellor of the system and the university presidents, developing policy in student life matters and assessing the quality of student life.

7. At all material times herein, Defendant **UNIVERSITY** appointed and/or hired the professor of the music department Defendant **DAVID CHEVAN** ("**CHEVAN**"); and the chairman of the music department, Defendant **JONATHAN IRVING** (the "**CHAIRMAN**"); and was responsible to oversee and supervise the acts, conduct, errors, and/or omissions of Defendant **UNIVERSITY'S** officers, servants, employees, administrators, agents, representatives and/or other designees in relation to any and all university conduct and or activity, including but not limited to, the acts, errors and/or omissions of Defendants **CHEVAN** and **CHAIRMAN**.

8. At all material times herein, Defendant **UNIVERSITY,** appointed and/or hired the president of Defendant **UNIVERSITY**, Defendant **STANLEY BATTLE** (the "**PRESIDENT**") by the authority granted to it pursuant to Connecticut General Statutes

10a-89(a) (hereinafter referred to and included in the statement "law(s) of the State of Connecticut" where used) and was responsible to oversee and supervise the acts, conduct, errors, and/or omissions of Defendant **UNIVERSITY'S** agents, servants, employees, administrators, representatives, and/or other designees including, but not limited to, those of Defendants **CHEVAN,** the **PRESIDENT,** and the **CHAIRMAN.**

9. At all relevant times herein, the **PRESIDENT,** along with Defendant **UNIVERSITY**, his/its agents, servants, employees, and/or designees acted individually and/or under color of State law, and were responsible for the supervision, oversight, training, hiring, terminating, discipline, and/or retention of employees of Defendant **UNIVERSITY**, and for the actions and/or conduct of employees in the course of performing their duties for said **UNIVERSITY**.

10. At all relevant times herein, the **CHAIRMAN**, along with Defendant **UNIVERSITY**, his/its agents, servants, employees, and/or designees acted at all times material hereto, individually and/or under color of State law, were responsible for the supervision, oversight, training, hiring, terminating, discipline, and/or retention of members of the music department at Defendant **UNIVERSITY.**

11. At all relevant times herein, Defendant **CHEVAN** was employed by Defendant **UNIVERSITY**, and at all times material hereto he acted individually and/or under color of law, in his capacity as an agent, servant, employee and/or designee of Defendants **PRESIDENT**, the **CHAIRMAN** and/or the **UNIVERSITY.**

12. Together, Defendants **CONNECTICUT STATE UNIVERSITY SYSTEM, SOUTHERN CONNECTICUT STATE UNIVERSITY, CHEVAN,** the

**PRESIDENT** and **CHAIRMAN,** will hereinafter be referred to as the

**"DEFENDANTS."**

13.     Together Defendants **PRESIDENT** and **CHAIRMAN,** will hereinafter be referred to as the "**SUPERVISING DEFENDANTS**"

**B.  JURISDICTION AND VENUE**

14.     This Court has original jurisdiction of this complaint espousing federal questions pursuant to 28 U.S.C. §1331; 28 U.S.C. §1343(a)(3) & (4); 42 U.S.C. §1983; and 20 U.S.C. § 1681; and has jurisdiction of any and all State claims made hereunder, pursuant to the principles of pendant jurisdiction.

15.     Venue is proper in this Judicial District, pursuant to 28 U.S.C. Sec 1391(b) because events out of which **PLAINTIFF'S** claims emanate occurred, and continue to occur, in the entire Judicial District of Connecticut; and pursuant to 18 U.S.C. Sec. 1965, because the **PLAINTIFF'S** claims are directed against **DEFENDANTS** whom are employees and/or agents of the State of Connecticut.

**C.  NATURE OF THE CASE**

16.     Defendant **CHEVAN'S** duty as a professor of Defendant **UNIVERSITY** was to interact with students as a professor and a mentor and in accordance with the policy of Defendant **UNIVERSITY.**

17.     Defendant **CHEVAN'S** misconduct occurred on Defendant **UNIVERSITY'S** campus, during school hours, and was facilitated by Defendant **UNIVERSITY'S** resources, while Defendant **CHEVAN** was acting as a professor, and while **PLAINTIFF** was a student enrolled in Defendant **CHEVAN'S** classes.

18.     Between January 2011 and May 2011 (hereinafter referred to as the "Spring Semester"), **PLAINTIFF** was enrolled in two of Defendant **CHEVAN'S** music classes at Defendant **UNIVERSITY**.

19.     During **PLAINTIFF'S** enrollment and participation as a student in Defendant **CHEVAN'S** classes, **CHEVAN** began instructing **PLAINTIFF** in her use of the saxophone.

20.     During the Spring Semester, Defendant **CHEVAN** began to target **PLAINTIFF** through his suggestive actions, which included, but were not limited to, the following:(hereinafter refereed to as "Sexual Harassment"):

(a)     Arranging time to spend alone with **PLAINTIFF** in his office at Defendant **UNIVERSITY'S** campus;

(b)     Engaging in intimate conversations with **PLAINTIFF** regarding Defendant **CHEVAN'S** problems with his wife and his previous affairs with another student;

(c)     Coming on to **PLAINTIFF** by directly describing her as "sexy", "gorgeous" and "attractive"; telling **PLAINTIFF** that his "love was unconditional";

(d)     Asking **PLAINTIFF** to hug Defendant **CHEVAN** after a performance, in front of other students;

(e)     Announcing to **PLAINTIFF'S** classmates that he dedicated a specific song to **PLAINTIFF**;

(f)     Requesting to speak with **PLAINTIFF** alone in order to tell her that he found her "attractive," that he was "a very sensual person" and that he could feel "something between" them, "some kind of chemistry," and " "if I wasn't your professor and you my student, things could be different";

(g)     Informing **PLAINTIFF** while in his office, through words and gestures, that he once had an affair with a student and that he could see himself

"engaging in similar behaviors" with **PLAINTIFF,** and subsequently requesting that **PLAINTIFF,** accompany him to get a cup of coffee before rehearsal; and/or

(h)     Leading **PLAINTIFF** to a very small storage room with no windows and only one door, insisting, upon **PLAINTIFF'S** refusal, that she go inside, whereupon **PLAINTIFF,** believing the circumstances would worsen, complied, and Defendant **CHEVAN** closed the door, spread his legs and leaned against and blocked the only door, proposing the moment be used to engage in intimate relations. (hereinafter referred to as the "Storage Room Incident").

21.     In or around April 4, 2011, **PLAINTIFF** filed a report with the

**UNIVERSITY** via Human Resources (hereinafter "H.R.").

22.     On or around April 26, 2011, the Office of Diversity and Equity Programs

completed an investigation prompted by **PLAINTIFF'S** complaint to H.R., and found

that Defendant **CHEVAN** violated Defendant **UNIVERSITY'S** Discrimination and

Sexual Harassment Prevention Policy and had created an intimidating, hostile, or

offensive educational environment.

23.     During the course of the investigation conducted by D&E, another student

provided a written statement regarding Defendant **CHEVAN'S** prior misconduct towards

her, wherein she detailed suggestive remarks and inappropriate touching, and upon

information and belief, said report contained statements that **CHEVAN** offered to smoke

marijuana with her and invited her into his home stating that his wife was away.

24.     During the course of the D&E investigation, Defendant **CHEVAN**

admitted to making numerous comments to **PLAINTIFF**, and confirming the Plaintiff's

allegations, including his admission that he "transgressed boundaries" with **PLAINTIFF,**

as well as the other student who came forward.

25.     At all material times, it was the Defendant **UNIVERSITY** and **SUPERVISING DEFENDANTS'** policy that "[r]omantic, dating, or sexual relationships between an employee and a student over whom said employee exercises SUPERVISING or evaluative authority is prohibited at the Connecticut State University." See http://www.ct.edu/hr/policies/.

26.     Upon information and belief, D&E forwarded the case to Human Resources and to the Provost to determine the appropriate disciplinary action, based on its finding that **CHEVAN'S** "conduct had the purpose or effect of unreasonably interfering with work or academic performance or creating an intimidating, hostile, or offensive educational environment for [**PLAINTIFF**].  His conduct was persistent and pervasive and was reasonably perceived as offensive or hostile to constitute the type of sexual harassment referred to as 'hostile environment.'"[1]

27.     Upon information and belief, the Defendant **UNIVERSITY** and **SUPERVISING DEFENDANTS** were notified of and/or provided a copy of the Report by D&E, and neither failed to take substantial or reasonably appropriate action to terminate the effect of the sexual harassment, or Defendant **CHEVAN,** or otherwise seriously discipline him for his inappropriate conduct, instead  downplaying the finding of pervasive "Sexual Harassment," and exhibiting deliberate indifference in the face of

---

[1] Section "(c)" is the definitional section of the D&E Report, defining "hostile environment" as "such conduct [that] has the purpose or effect of unreasonably interfering with employment opportunities,work or academic performance or creating an intimidating, hostile, or offensive work or educational environment.  The conduct must typically be persistent and pervasive and be reasonably perceived as offensive or hostile to constitute this type of sexual harassment referred to as 'hostile environment.'"

the obvious effects of **CHEVAN'**s continued presence and teaching privileges, upon the **PLAINTIFF,** who had to continue her studies on the same campus as **CHEVAN**.

28.     Upon information and belief, when **PLAINTIFF** contacted Defendant **CHAIRMAN** regarding her concern, that although the Office of Diversity and Equity Programs would recommend action, Defendant **CHEVAN** would be permitted to continue teaching, the aforesaid indifference was specifically exhibited in an email from the **CHAIRMAN** to the **PLAINTIFF,** wherein the former responded to the concern by stating: "welcome to the world of academia!"

29.     At all material times, neither the **UNIVERSITY**, the **SUPERVISING DEFENDANTS**, nor H.R., kept the **PLAINTIFF** informed of the investigation, or of steps taken to abate the sexual harassment.

30.     Upon information and belief, the **UNIVERSITY** and **SUPERVISING DEFENDANTS**, had knowledge of past Sexual Harassment engaged in by **CHEVAN** prior to April 4, 2012, when the **PLAINTIFF** filed her complaint, but either ignored and/ or exercised a deliberate indifference to the same.

31.     Upon information and belief, although the Sexual Harassment was (i) brought numerous times to the attention of employees and administrators of the **UNIVERSITY**, including the **CHAIRMAN** and the **PRESIDENT,**  and (ii) observed by other students, employees,  Defendant **CHEVAN** was permitted to continue working with the **PLAINTIFF** and other students.

32.     In spite of the Sexual Harassment finding by D&E,  neither the **UNIVERSITY** nor the **SUPERVISING DEFENDANTS** took appropriate action, in

spite **PLAINTIFF'S** numerous expressed concerns that her educational experience would be hampered.

33.    At all material times herein, **PLAINTIFF** had a right to a safe educational environment, free from Sexual Harassment by **CHEVAN**, and a hostile educational environment as a result of **CHEVAN's** conduct and the failure of the **UNIVERSITY** or the **SUPERVISING DEFENDANTS** to adequately remedy the sexual harassment, in direct violation of Title IX.

34.    At all material times, the **UNIVERSITY** and the **SUPERVISING DEFENDANTS,** acting individually or in concert with one another, abused the authority vested in them as University officials, resulting in injury to the **PLAINTIFF**.

### COUNT 1: VIOLATION OF CIVIL RIGHTS UNDER TITLE IX OF THE EDUCATION AMENDMENTS OF 1972, 20 U.S.C. § 1681
### *(As to Defendant University)*

1-34.    **PLAINTIFF** repeats and realleges the allegations contained in Paragraphs 1 through 34 of this Complaint, as if the same were fully set forth herein.

35.    **DEFENDANT UNIVERSITY** receives federal funding for its operation as a State University and is subject to governmental regulation, including but not limited to those related to Title IX of the  Education Acts of 1972, which provides, "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance ..." Section 901(a) of Title IX of the Education Amendments of 1972.

36.    Title IX requires that all schools receiving federal funding, have written

9

policies prohibiting sexual harassment, and that all schools establish procedures to investigate and remedy complaints of said harassment, and further, that schools receiving federal funding respond immediately and effectively to student complaints of sexual harassment.

37.    At all material times, **CHEVAN** used, capitalized on, and relied upon, his actual authority as the **PLAINTIFF'S** professor;  acting under color of law, he used his status as a professor, during class and/or school related activities, on or about the **UNIVERSITY** campus, in sexually harassing the **PLAINTIFF,** who  justly relied upon  **CHEVAN's** apparent authority and status in electing to enroll in classes he taught, engaging in music related school activities, and meeting with him in his office and elsewhere on campus pursuant to his requests.

38.    Defendant **UNIVERSITY** knew or should have known their obligations under Title IX, and that in light of the D&E finding that **DEFENDANT CHEVAN'S** conduct constituted sexual harassment, and a hostile educational environment in violation of Title IX, that the PLAINTIFF was the subject of serious harassment.

39.    Upon information and belief, Defendant **UNIVERSITY** had actual and/or constructive knowledge of the Sexual Harassment and similar conduct by Defendant **CHEVAN** in the past, as well as the authority and power to protect **PLAINTIFF** from the Sexual Harassment, discrimination, and post harassment hostile environment, but failed to take immediate, effective, remedial steps, exhibiting clear indifference to Defendant **CHEVAN'S** misconduct, and its effect on the **PLAINTIFF'S** access to education.

40.     D&E found that **CHEVAN** had created an intimidating, hostile, or offensive educational environment, and his conduct qualified as sexual harassment under university policies, but the **UNIVERSITY** took no immediate or adequate remedial action in light of this finding.

41.     Defendant **UNIVERSITY** failed to comply with the requirements of Title IX and their own related guidelines in the following ways:

(a)     Failing to properly investigate or act upon **PLAINTIFF'S** claim;

(b)     Failing to notify law enforcement of Defendant **CHEVAN'S** conduct;

(c)     Failing to discipline Defendant **CHEVAN** in a meaningful or appropriate manner;

(d)     Downplaying the severity of the Sexual Harassment, exhibiting a deliberate indifference to the conduct by CHEVAN;

(e)     Responding to the incident in a manner that negatively affected the **PLAINTIFF** but not Defendant **CHEVAN**;

(f)     Failing to effectively respond to the Sexual Harassment, and communicate the status and outcome of the discipline received, if any, to the Plaintiff;

(g)     Failing to have procedures in place to prevent, investigate, respond to, or terminate any incidences of sexual harassment; and

(h)     Failing to provide an adequate and immediate remedy commensurate with the Title IX violation found to have occurred.

42.     As a direct and proximate result of Defendant **UNIVERSITY'S** failure to comply with Title IX, **PLAINTIFF** was forced to participate in a hostile and fearful educational environment, and subjected to severe and pervasive sexual harassment which interfered in her right to an education, the same characterized by (a) repeated unwanted sexual advances, (b) requests to engage in personal sexual

relationships with Defendant **CHEVAN**, and (c) verbal and physical conduct of a sexual nature, for which no remedy was afforded to the **PLAINTIFF**.

43.     As a direct and proximate result of **DEFENDANTS'** deliberate indifference, and failure to remediate the sexual harassment, **PLAINTIFF** grew so uncomfortable and anxious that she withdrew from Defendant **CHEVAN'S** classes, and sought treatment with a private counselor.

44.     As a direct and proximate result of the foregoing actions of Defendant **UNIVERSITY**, its agents, servants, employees and/or other representatives, the **PLAINTIFF** was discriminated against in the context of her education.

45.     As a direct and proximate result of **DEFENDANTS'** conduct, **PLAINTIFF** began arriving late for classes, missing classes, dropping scores, and eventually withdrew from Defendant **CHEVAN'S** courses, the small ensembles, blues band, and Latin jazz band, and suffered severe mental and emotional distress, manifested by such physical and other symptoms as:  sleeplessness, anxiety, stress, fright, nervousness, fatigue, depression, nausea, headaches, hypersensitivity, and crying.

46.     As a further result thereof **PLAINTIFF** has been unable to carry out all of the functional activities in her life in the same and/or similar manner as she did prior to sustaining said injuries, including but not limited to, maintaining normal trusting relationships with professors and actively participating in academic social situations with peers.

47.  As a direct and proximate result of the **DEFENDANTS'** conduct, the Plaintiff has suffered, and will continue to suffer damages.

## COUNT 2:   42 U.S.C. 1983
### *(As to Defendant CHEVAN individually)*

1-34.   **PLAINTIFF** repeats and realleges the allegations contained in Paragraphs 1 through 34 of **COUNT ONE** of this Complaint, as if the same were fully set forth herein.

35.   At all times relevant to this Complaint, **PLAINTIFF** had a clearly established Constitutional right against unreasonable searches and/or seizures, and a right to Due Process under, under the Constitution of the United States.

36.   **DEFENDANT CHEVAN**, acting under color of State law, and with knowledge of **PLAINTIFF'S** established right, engaged in conduct at the **UNIVERSITY** during his teaching and/or extra curricular school related activities, which violated, interfered with and/or derogated the **PLAINTIFF'S** aforementioned Constitutional rights.

37.   At all material times, **CHEVAN** acted individually, imbued with the authority granted to him as a professor at a State University, which is constituted, enabled, created, and regulated, by the laws of the State of Connecticut.

38.   **PLAINTIFF** was seized by **CHEVAN,** when he led her into a very small storage room with no windows, closed the door, spread his legs and leaned against the door with the effect of blocking **PLAINTIFF'**s egress , while he engaged in promiscuous behavior attempting to engage and entice her into romantic, intimate and/or sexual relations ("Storage Room Incident").

39.   The "Storage Room Incident" involved physical positioning and advances

by the Defendant, which gave rise to the **PLAINTIFF'S** objectively

reasonable fear of assault, and belief that she was not free to leave.

      40.    The aforementioned conduct occurred while in the course of school related

activities, on the University Campus, pursuant to requests made by the Defendant

 **CHEVAN,** while he acted in his official capacity as **PLAINTIFF's** professor.

      41.    At all material times it was **CHEVAN's** intention to restrain the

movement of the Plaintiff, and by his show of authority and/or physical force, said

**DEFENDANT's** conduct resulted in termination of the **PLAINTIFF's** liberty, and

freedom of movement.

      42.    At all material times, the **PLAINTIFF** had a reasonable expectation of

privacy that was impeded/invaded by Defendant **CHEVAN,** and the "Storage Room

Incident" amounted to deprivation of the **PLAINTIFF'S** Fourth Amendment right

against  unreasonable seizures.

      43.    At all material times **CHEVAN's** conduct was predatory, involving sexual

harassment of a female student, who was discriminated against, and targeted for

differential treatment by **CHEVAN** based on her gender, in violation of her equal

protection rights.

      44.    Under color of State law **CHEVAN's** actions also deprived the

**PLAINTIFF** of her Constitutional right to liberty and/or her Constitutional right to

"equal protection" pursuant to the Due Process Clause of the Fourteenth Amendment to

the United States Constitution.

      45.    As a direct and proximate result of **DEFENDANTS'** conduct,

**PLAINTIFF** suffered severe mental and emotional distress, manifested by such physical and other symptoms as: sleeplessness, anxiety, stress, fright, nervousness, fatigue, depression, nausea, headaches, hypersensitivity, and crying; and **PLAINTIFF**, began arriving late for classes, missing classes, dropping scores and eventually withdrawing from Defendant **CHEVAN'S** courses, the small ensembles, blues band, and Latin jazz band.

46.     As a further result thereof **PLAINTIFF** has been unable to carry out all of the functional activities in her life in the same and/or similar manner as she did prior to sustaining said injuries, including but not limited to, maintaining normal trusting relationships with professors and other men, and actively participating in academic and social activities with others.

47.     As a direct and proximate result of the **DEFENDANTS'** conduct, the Plaintiff has suffered, and will continue to suffer damages.


### COUNT 3:  42 U.S.C. § 1983
*(As to Individuals Chevan, and "SUPERVISING Defendants"--Chairman and President)*

1-42.   **PLAINTIFF** repeats and realleges the allegations contained in Paragraphs 1 through 42 of **COUNT ONE** in this Complaint, as if the same were fully set forth herein.

43.     At all material times **CHEVAN** and the **SUPERVISING DEFENDANTS**, were imbued with the authority granted to them as professors, officials,

chairman, presidents and/or administrators at a State University, which is constituted, enabled, created, and regulated, by the laws of the State of Connecticut.

44.     At all material times the **SUPERVISING DEFENDANTS** and **CHEVAN** individually, acted under color of state law, and their conduct deprived **PLAINTIFF** of rights guaranteed under **TITLE IX,** a federal law prohibiting sexual harassment in education, and granting her equal opportunity and access to all benefits and privileges of an education.

45.     The conduct of **CHEVAN** and/or the **SUPERVISING DEFENDANTS** in failing to adequately remedy and take **PLAINTIFF'S** claims seriously, amounted to an instantiation of a customary and widespread practice of ignorance and avoidance, in the **UNIVERSITY's** dealing with sexual harassment claims.

46.     The **SUPERVISING DEFENDANTS,** acting under color of State law, acted with deliberate indifference toward the **PLAINTIFF's** sexual harassment claim and condoned the violation of **PLAINTIFF's** Title IX rights, thereby depriving **PLAINTIFF** of her rights privileges or immunities secured under the law of the United States.

47.     At all material times, **PLAINTIFF** also had a Constitutional right to "life, liberty and property," and "equal protection," pursuant to the Fourteenth Amendment to the United States Constitution.

48.     In failing to adequately remedy the Sexual Harassment suffered by the **PLAINTIFF** was (1) placed in a hostile and/or oppressive educational environment, (2) forced to drop classes, (3) forced to forego educational opportunities, and (4) forced to stop participating in school related extra curricular music activities, all

in derogation of liberty rights and privileges secured unto her under the Due Process Clause of the United States Constitution.

49.     The **SUPERVISING DEFENDANTS** failed to act appropriately, according to established State procedures for dealing with claims of harassment of a female student, who was discriminated against, and subjected to differential treatment by **CHEVAN** based on her gender.

50.     In spite of **PLAINTIFF** having been targeted because of her gender, and having been declared by D&E to have suffered sexual harassment causing a hostile and/ or oppressive educational atmosphere, the **SUPERVISING DEFENDANTS** failed to remedy the harm, and thereby condoned and facilitated the same, in further spite of both State law provisions and University Guidelines which require otherwise.

51.     The conduct of the **SUPERVISING DEFENDANTS** in failing to redress the harm suffered by the Plaintiff, and facilitating the continuation of Plaintiff's education in a hostile or oppressive environment is conscience shocking, arbitrary and capricious, amounting to a deprivation of **PLAINTIFF's** Fourteenth Amendment due process rights to liberty and equal protection.

52.     The actions of the **SUPERVISING DEFENDANTS** constituted a deprivation of **PLAINTIFF'S** Fourteenth Amendment rights to liberty and equal protection.

53.     As a direct and proximate result of **DEFENDANTS'** conduct, **PLAINTIFF** suffered severe mental and emotional distress, manifested by such physical and other symptoms as: sleeplessness, anxiety, stress, fright, nervousness, fatigue,

depression, nausea, headaches, hypersensitivity, and crying; and **PLAINTIFF**, began

arriving late for classes, missing classes, dropping scores and eventually withdrawing

from Defendant **CHEVAN'S** courses, the small ensembles, blues band, and Latin jazz

band.

54.     As a further result thereof **PLAINTIFF** has been unable to carry out all of

the functional activities in her life in the same and/or similar manner as she did prior to

sustaining said injuries, including but not limited to, maintaining normal trusting

relationships with professors and actively participating in academic social situations with

peers.

55.     As a direct and proximate result of the **DEFENDANTS'** conduct, the

Plaintiff has suffered, and will continue to suffer damages.

### COUNT 4: FALSE IMPRISONMENT
*(As to Defendant Chevan)*

1-34.   **PLAINTIFF** repeats and realleges the allegations contained in Paragraphs

1 through 34 of this Complaint, as if the same were fully set forth herein at length.

35.     Defendant **CHEVAN**, without lawful excuse, privilege, justification, or

statutory authority, performed acts, and engaged in conduct during the Sexual

Harassment as alleged  in Paragraph 20 of this **COMPLAINT**, more specifically the

Storage RoomIncident, against **PLAINTIFF'S** will, and without her consent, which

resulted in the false and unlawful imprisonment of the **PLAINTIFF.**

36.     Defendant **CHEVAN** led **PLAINTIFF** to a very small storage room with

no windows and only one door, closing the door behind her and blocking the only exit by

spreading his legs and leaning up against the only door.

37.     **PLAINTIFF** was aware of the restraint, confinement, or detention and had little, if any, ability to defend herself against Defendant **CHEVAN'S** conduct.

38.     Defendant **CHEVAN** committed such misconduct intentionally and/or with knowledge to a substantial certainty that such detention, confinement, and restraint of **PLAINTIFF**, would cause such detention, confinement, and/or restraint of **PLAINTIFF** in a restricted area for an appreciable length of time, and he accomplished the same by exercise of express and/or implied force.

39.     Defendant **CHEVAN** knew or should have known that his conduct during the Storage Room Incident involved the unreasonable risk of causing long-term mental and emotional distress.

40.     The damages, losses and injuries, sustained by **PLAINTIFF**, were directly and proximately caused by Defendant **CHEVAN'S** intentional, willful, wanton, reckless, malicious, careless and/or negligent conduct.

41.     As a direct and/or proximate result of Defendant **CHEVAN'S** conduct, **PLAINTIFF** was caused to suffer fright, extreme humiliation, anxiety, embarrassment, anguish, alienation from her classmates and physical illness when attending Defendant **CHEVAN'S** classes.

42.     As a further result thereof, **PLAINTIFF** suffered severe mental and emotional distress, manifested by such physical and other symptoms as: sleeplessness, anxiety, stress, fright, nervousness, fatigue, depression, nausea, headaches, hypersensitivity, and crying; and **PLAINTIFF**, began arriving late for classes, missing

classes, dropping scores and eventually withdrawing from Defendant **CHEVAN'S**

courses, the small ensembles, blues band and Latin jazz band.

43.    As a further result thereof **PLAINTIFF** has been unable to carry out all of

the functional activities in her life in the same and/or similar manner as she did prior to

sustaining said injuries, including but not limited to, maintaining normal trusting

relationships with professors and actively participating in academic social situations with

peers.

44.    **PLAINTIFF** has and will continue to suffer damages well into the future,

as a direct and proximate result of Defendant **CHEVAN'S** conduct.

### COUNT 5: NEGLIGENCE
*(As to Defendant Chevan and Supervising Defendants Individually)*

1-34.    **PLAINTIFF** repeats and realleges the allegations contained in Paragraphs

1 through 34 of this Complaint, as if the same were fully set forth herein.

35.    At all material times, the **SUPERVISING DEFENDANTS** and

**CHEVAN** acted individually, imbued with the authority granted to him as a professor at a

State University,  which is constituted, enabled, created, and regulated, by the laws of the

State of Connecticut.

36.    At all times material, Defendant **CHEVAN** and the **SUPERVISING**

**DEFENDANTS** had a duty to provide **PLAINTIFF** with an education in a safe

environment, free from foreseeable risks of harm and free of sexual harassment.

37.    Defendant **CHEVAN** and the **SUPERVISING DEFENDANTS** owed a

duty to **PLAINTIFF**, to exercise the care and skill ordinarily expected of reasonable

people and educators similarly situated.

38. The acts and conduct of Defendant **CHEVAN** and the **SUPERVISING DEFENDANTS**, previously set forth in **COUNTS** one through **THREE** hereof, fall well below the standard of care which is required of school administrators, educators, employees, or any other person hired with students, and constituted a breach of the duty that Defendant **CHEVAN** and the **SUPERVISING DEFENDANTS** owed to **PLAINTIFF.**

39. Defendant **CHEVAN** and the **SUPERVISING DEFENDANTS** knew or reasonably should have known that the Sexual Harassment was being perpetrated against the **PLAINTIFF**, and the same required an immediate remedy in order to avoid risk of harm to the **PLAINTIFF**, including, but not limited to, psychological and emotional harm.

40. Defendant **CHEVAN** and the **SUPERVISING DEFENDANTS** breached their duties of care owed to **PLAINTIFF** by:

(a)   Perpetrating the Sexual Harassment upon **PLAINTIFF**;

(b)   Failing to protect and/or provide adequate protection for **PLAINTIFF** while she was enrolled in Defendant **CHEVAN'S** classes at Defendant **UNIVERSITY**;

(c)   Failing to institute and maintain an effective employee sexual assault/ harassment policy;

(d)   Failing to investigate Defendant **CHEVAN'S** prior inappropriate relationships with other students;

(e)   Failing to take any action to prohibit, prevent or deter the Sexual Harassment, in spite of the fact that Defendant **CHEVAN** and the **SUPERVISING DEFENDANTS** knew or reasonably should have known that some or all aspects of the Sexual Harassment were being perpetrated

against **PLAINTIFF** throughout the Spring Semester;

(f)     Failing to terminate Defendant **CHEVAN'S** employment after they had learned of his misconduct;

(g)     Failing to properly supervise and monitor its employees;

(h)     Failing to appropriately maintain, restrict, limit, or otherwise account for, the use of employee e-mails and office space, allowing employees access to areas of Defendant **UNIVERSITY,** which are not securely monitored and should not be accessed privately with students.

(i)     Failing to effectively respond to the Sexual Harassment, and communicate the status and outcome of the discipline received;

(j)     Failing to have procedures in place to prevent, investigate, respond to, or terminate any incidences of sexual harassment;

(k)     Failing to provide an adequate and immediate remedy commensurate with the Title IX violation found to have occurred and/or

(l)     Retaining **CHEVAN** as a professor after he was found to have engaged in sexual harassment, producing a hostile educational environment for the PLAINTIFF.

41.     The damages, losses and injuries, sustained by **PLAINTIFF**, were directly and proximately caused by Defendant **CHEVAN** and the **SUPERVISING DEFENDANTS'** careless and/or negligent conduct.

42.     As a direct and/or proximate result of Defendant **CHEVAN** and the **SUPERVISING DEFENDANTS'** conduct, **PLAINTIFF** was caused to suffer extreme humiliation, anxiety, embarrassment, anguish, alienation from her classmates and physical illness when attending Defendant **CHEVAN'S** classes.

43.     As a further result thereof, **PLAINTIFF** suffered severe mental and emotional distress, manifested by such physical and other symptoms as: sleeplessness,

anxiety, stress, fright, nervousness, fatigue, depression, nausea, headaches, hypersensitivity, and crying; and **PLAINTIFF**, began arriving late for classes, missing classes, dropping scores and eventually withdrawing from Defendant **CHEVAN'S** courses, the small ensembles, blues band and Latin jazz band.

44.     As a further result thereof **PLAINTIFF** has been unable to carry out all of the functional activities in her life in the same and/or similar manner as she did prior to sustaining said injuries, including but not limited to, maintaining normal trusting relationships with professors and actively participating in academic social situations with peers.

45.     **PLAINTIFF** has and will continue to suffer damages well into the future, as a direct and proximate result of Defendant **CHEVAN** and the **SUPERVISING DEFENDANTS'** conduct.

**COUNT 6: NEGLIGENT HIRING**
***(As to Supervising Defendants Individually)***

1-34.   **PLAINTIFF** repeats and realleges the allegations contained in Paragraphs 1 through 34 of this Complaint, as if the same were fully set forth herein at length.

35.     At all material times, the **SUPERVISING DEFENDANTS** acted individually, imbued with the authority granted to him as a professor at a State University, which is constituted, enabled, created, and regulated, by the laws of the State of Connecticut

36.     The **SUPERVISING DEFENDANTS** owed a duty to its student including **PLAINTIFF** to use reasonable care to select and hire agents, servants, managers, employees, and/or other representatives, competent and fit for the work

assigned to them, here instruction of students, and to refrain from selecting and

hiring individuals not fit or competent to carry on the instruction of students.

37.     **SUPERVISING DEFENDANTS** breached the duty of due care owed to

its students including **PLAINTIFF**, in one or more of the following ways:

(a)     Failing to properly investigate Defendant **CHEVAN'S** background
during the hiring process including, without limitation, verifying
references, reviewing his licensing record, communicating with prior
employers, and checking out Defendants history of sexual harassment and/
or inappropriate sexual conduct involving students at previous schools
where he worked;

(b)     Failing to implement and mandate appropriate hiring procedures
for situations where potential employees may have the tendency to
carry out inappropriate relationships with students;

(c)     Failing to secure more thorough hiring procedures such as the
incorporation of psychological evaluations, checking credentials, and
properly vetting candidates for teaching positions; and

(d)     Failing to recognize Defendant **CHEVAN'S** potential to carry out
inappropriate and predatory relationships, or history thereof with students;

38.     Throughout the Spring Semester, Defendant **CHEVAN u**nlawfully

sexually harassed **PLAINTIFF** through his words and conduct for the purpose of his own

sexual gratification, by engaging in the Sexual Harassment geared toward **PLAINTIFF**

as set forth in Paragraph 20 above.

39.     As a direct and/or proximate result of **SUPERVISING DEFENDANTS'**

conduct, **PLAINTIFF** was caused to suffer extreme humiliation, anxiety, embarrassment,

anguish, alienation from her classmates and physical illness when attending Defendant

**CHEVAN'S** classes.

40.     As a further result thereof, **PLAINTIFF** suffered sever mental and emotional distress, manifested by such physical and other symptoms as: sleeplessness, hypersensitivity, and crying; and **PLAINTIFF**, began arriving late for classes, missing classes dropping scores and eventually withdrawing from Defendant **CHEVAN'S** courses, the small ensembles, blues band and Latin Jazz band.

41.     As a further result thereof **PLAINTIFF** has been unable to carry out all of the functional activities in her life in the same and/or similar manner as she did prior to sustaining said injuries, including but not limited to, maintaining normal trusting relationships with professors and actively participating in academic social situations with peers.

42.     **PLAINTIFF** has and will continue to suffer damages well into the future as a direct and proximate result of the **SUPERVISING DEFENDANTS'** conduct.

## COUNT 7: NEGLIGENT SUPERVISION
### *(As to Supervising Defendants Individually)*

1-34.   **PLAINTIFF** repeats and realleges the allegations contained in Paragraphs 1 through 34 of this Complaint, as if the same were fully set forth herein at length.

35.     At all material times, the **SUPERVISING DEFENDANTS** and **CHEVAN** acted individually, imbued with the authority granted to him as a professor at a State University,  which is constituted, enabled, created, and regulated, by the laws of the State of Connecticut

36.     At all material times the **SUPERVISING DEFENDANTS** owed a duty of reasonable care to **PLAINTIFF**, to properly and safely supervise their agents, servants,

managers, employees, and/or other representatives, whom Defendant **UNIVERSITY** and the **SUPERVISING DEFENDANTS** knew would be involved in any manner with the instruction of students.

37.     Defendant **UNIVERSITY** and the **SUPERVISING DEFENDANTS** breached their duty of care to **PLAINTIFF** in one or more of the following ways:

(a)     Failing to properly supervise the activities of Defendant **CHEVAN,** and continually monitor his fitness for the sensitive and important position of a professor, with performance reports/meetings, regular meetings with an immediate supervisor in order to guard against existent and developing inappropriate or unlawful behavior;

(b)     Failing to properly train and supervise employees in a manner conducive to preventing inappropriate and predatory relationships with students;

(c)     Failing to implement and mandate appropriate reporting procedures for situations where inappropriate relationships with students occur, and need to be brought to the attention of SUPERVISING staff, and to monitor its professors' conduct at regular intervals to ensure against such inappropriate relationships;

(d)     Failing to properly supervise employees on a regular basis and in a manner conducive to ensuring appropriate behavior toward, and professional supervision and investigation of students;

(e)     Failing to take appropriate steps to immediately terminate and/or suspend Defendant **CHEVAN**, or otherwise prevent his predatory conduct toward **PLAINTIFF**;

(f)     Failing to uncover, investigate and/or to take steps to prevent predatory behavior, occurrences of which were common knowledge to the other members of Defendant **UNIVERSITY.**

37-46.  **PLAINTIFF** repeats and realleges the allegations contained in Paragraphs 33 through 42 of **COUNT SIX**, as if the same were fully set forth herein.

## COUNT 8: NEGLIGENT RETENTION
### *(As to Defendant University and the Supervising Defendants Individually)*

1-34.    **PLAINTIFF** repeats and realleges the allegations contained in Paragraphs 1 through 34 of this Complaint, as if the same were fully set forth herein at length.

35.    At all material times, the **SUPERVISING DEFENDANTS** and **CHEVAN** acted individually, imbued with the authority granted to him as a professor at a State University,  which is constituted, enabled, created, and regulated, by the laws of the State of Connecticut.

36.    Defendant **UNIVERSITY** and the **SUPERVISING DEFENDANTS** owed a duty of reasonable care to **PLAINTIFF**, specifically in determining whether to retain the services of certain employees.

37.    Defendant **UNIVERSITY** and **SUPERVISING DEFENDANTS** breached their duty to plaintiff in one or more of the following ways:

(a)    Failing to monitor Defendant **CHEVAN'S** fitness for the sensitive and important position of a professor, using performance reports/meetings and regular meetings with an immediate supervisor in order to guard against existent and developing inappropriate or unlawful behavior, and place him on notice of termination for inappropriate conduct with a student;

(b)    Failing to recognize Defendant **CHEVAN'S** inappropriate predatory relationship with students;

(c)    Failing to uncover, investigate and/or take steps to prevent predatory behavior,  occurrences of which were common knowledge to other students and members of human Resources;

(d)    Failing to take appropriate steps to immediately terminate and/or suspend Defendant **CHEVAN**, or otherwise prevent his predatory conduct toward the **PLAINTIFF**;

(e)     Failing to select, train and supervise employees competent and fit for the work assigned to them and to refrain from retaining the services of an unfit employee.

(f)     Continuing to employ **CHEVAN** after an investigation revealed he had violated the University's sexual harassment policies, and engaged in sexual harassment pursuant to Title IX, and permit him to remain upon the campus of the **UNIVERSITY** after said investigation revealed he was involved in inappropriate conduct with two then current students, as well as at least one student from a prior place of employment.

38.     As a direct and proximate result of **DEFENDANTS'** conduct, **PLAINTIFF** suffered severe mental and emotional distress, manifested by such physical and other symptoms as: sleeplessness, anxiety, stress, fright, nervousness, fatigue, depression, nausea, headaches, hypersensitivity, and crying; and **PLAINTIFF**, began arriving late for classes, missing classes, dropping scores and eventually withdrawing from Defendant **CHEVAN'S** courses, the small ensembles, blues band, and Latin jazz band.

39.     As a further result thereof **PLAINTIFF** has been unable to carry out all of the functional activities in her life in the same and/or similar manner as she did prior to sustaining said injuries, including but not limited to, maintaining normal trusting relationships with professors and actively participating in academic social situations with peers.

40.     As a direct and proximate result of the **DEFENDANTS'** conduct, the Plaintiff has suffered, and will continue to suffer damages.

### COUNT 9: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
*(As to Chevan and the SUPERVISING Defendants Individually)*

1-34.   **PLAINTIFF** repeats and realleges the allegations contained in Paragraphs

28

1 through 34 of this Complaint, as if the same were fully set forth herein.

35.     At all material times, the **SUPERVISING DEFENDANTS** and

**CHEVAN** acted individually, imbued with the authority granted to him as a professor at a

State University,  which is constituted, enabled, created, and regulated, by the laws of the

State of Connecticut

36.     **DEFENDANTS**, or any of them, engaged in conduct against

**PLAINTIFF**, which was extreme and outrageous, exceeding all bounds of usual

Toleration in society, including, but not limited to:

    (a)    Condoning and/or participating in an unlawful conflict of interest relationship with **PLAINTIFF**, who was a student under the authority of professor Defendant **CHEVAN**, who was likely to be taken advantage of and suffer as a result of such relationship;

    (b)    Treating the **PLAINTIFF**, a student, inappropriately by threatening her safety through the Sexual Harassment, and by embarrassing her in front of her classmates, while requesting hugs and making other inappropriate comments;

    (c)    Failing to properly supervise subordinate employees on a regular basis and in a manner conducive to ensuring appropriate behavior towards, and professional supervision and instruction of students;

    (e)    Failing to take appropriate steps to immediately terminate and/or suspend Defendant **CHEVAN**, or otherwise prevent his predatory conduct toward **PLAINTIFF**; and/or

    (f)    Failing to uncover and investigate and/or to take steps to prevent predatory behavior, occurrences of which were common knowledge to other students and members of Human Resources.

    (g)    Continuing to employ **CHEVAN** after an investigation revealed he had violated the University's sexual harassment policies, and engaged in sexual harassment in derogation of Title IX, and permit him to remain upon the campus of the **UNIVERSITY** after said investigation revealed

he was involved in inappropriate conduct with two then current students, as well as at least one student from a prior place of employment.

(i)     The **CHAIRMAN** sending an email to the Plaintiff in response to her concerns about **CHEVAN's** continued presence on campus, and the lack of any meaningful sanction associated with a finding that he had sexually harassed and created a hostile educational environment for the **PLAINTIFF**, which stated: "Welcome to the world of academia."

37.     The acts and/or conduct of **DEFENDANTS** caused **PLAINTIFF** to suffer severe emotional distress.

38.     The acts of **DEFENDANTS**, causing said severe emotional distress, were committed intentionally, willfully, wantonly, and/or in reckless disregard for the emotional well-being of **PLAINTIFF**, and to the reasonably foreseeable emotional, psychological, and developmental injuries that would be suffered by **PLAINTIFF**.

39.     As a direct and/or proximate result of **DEFENDANTS'** conduct, **PLAINTIFF** was caused to suffer extreme humiliation, anxiety, embarrassment, anguish, alienation from her classmates and physical illness when attending Defendant **CHEVAN'S** classes.

40.     As a further result thereof, **PLAINTIFF** suffered severe mental and emotional distress, manifested by such physical and other symptoms as: sleeplessness, anxiety, stress, fright, nervousness, fatigue, depression, nausea, headaches, hypersensitivity, and crying; and **PLAINTIFF**, began arriving late for classes, missing classes, dropping scores and eventually withdrawing from Defendant **CHEVAN'S** courses, the small ensembles, blues band and Latin jazz band.

41.     As a further result thereof **PLAINTIFF** has been unable to carry out all of the functional activities in her life in the same and/or similar manner as she did prior to

sustaining said injuries, including but not limited to, maintaining normal trusting relationships with professors and actively participating in academic social situations with peers.

42.    At all material times, **DEFENDANTS** knew, or should have known, that emotional distress would likely ensue as a result of the Sexual Harassment.

43.  **PLAINTIFF** has and will continue to suffer damages well into the future, as a direct and proximate result of **DEFENDANTS'** conduct.

### COUNT 10: NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
### *(As to Chevan and Supervising Defendants Individually)*

1-38.    **PLAINTIFF** repeats and realleges the allegations contained in Paragraphs 1 through 38 of this Complaint, as if the same were fully set forth herein.

39.    At all material times, **DEFENDANTS** knew, and/or reasonably should have known, that the conduct occurring during the Sexual Harassment and the 'Storage Room Incident", as detailed in Paragraph 20 of this **COMPLAINT**,  involved an unreasonable risk of causing emotional distress, and that such distress would result in illness and/or bodily harm to the **PLAINTIFF**.

40.  At all material times, **DEFENDANTS** knew, and/or reasonably should have known, that permitting **CHEVAN** to continue to teach classes on the same campus where as the **PLAINTIFF** was required to continue taking her classes, after he was found  to have sexually harassed the **PLAINTIFF,** and caused for her a hostile educational environment, involved an unreasonable risk of causing emotional distress, and that such distress would result in illness and/or bodily harm to the **PLAINTIFF**.

41. **DEFENDANTS'** conduct caused **PLAINTIFF** severe mental and emotional distress, manifested by headache, nausea, sleeplessness, anxiety, fear, nervousness, depression, mistrust of others, strained mentor and peer relationships.

42. As a direct and/or proximate result of **DEFENDANTS'** conduct, **PLAINTIFF** was caused to suffer extreme humiliation, anxiety, embarrassment, anguish, alienation from her classmates and physical illness when attending Defendant **CHEVAN'S** classes

43. As a further result thereof, **PLAINTIFF** suffered severe mental and emotional distress, manifested by such physical and other symptoms as: sleeplessness, anxiety, stress, fright, nervousness, fatigue, depression, nausea, headaches, hypersensitivity, and crying; and **PLAINTIFF**, began arriving late for classes, missing classes, dropping scores and eventually withdrawing from Defendant **CHEVAN'S** courses, the small ensembles, blues band and Latin jazz band.

44. As a further result thereof **PLAINTIFF** has been unable to carry out all of the functional activities in her life in the same and/or similar manner as she did prior to sustaining said injuries, including but not limited to, maintaining normal trusting relationships with professors and actively participating in academic social situations with peers.

45. **PLAINTIFF** has and will continue to suffer damages well into the future, as a direct and proximate result of **DEFENDANTS'** conduct.

**WHEREFORE**, Plaintiff prays that this Court:

a. Issue a Permanent Injunction enjoining Defendant **CHEVAN** from teaching upon any State University Campus, and from entering upon or remaining at any campus, in any capacity whatsoever, during any time which the **PLAINTIFF** is exercising her right to pursue an education in the State University System.

b. Award general and consequential damages as against **DEFENDANTS**;

c. Award actual and punitive damages against the Defendants.

d. Award **PLAINTIFF** any and all reasonable Attorney's fees;

e. Award Attorney's fees under 42 U.S.C. 1988;

f. Award Costs under 42 U.S.C. 1988; and

g. Award any other further relief, which this Court deems just and proper.

THE PLAINTIFF,

WENDY WYLER

＿＿L.S. / SES＿＿＿＿＿＿＿＿＿＿＿
Stephan Seeger, Esq. (19234)
Law Offices: Stephen J. Carriero
810 Bedford Street, Suite #3
Stamford, CT 06901
(203) 273-517

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 7, 2012, a copy of the foregoing **FIRST AMENDED COMPLAINT** was filed electronically, and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing via the Court'sCM/ECF

System

          L.S. /  SES

          Stephan E. Seeger
          Law Offices of S.J. Carriero, LLC
          810 Bedford Street, Unit #3
          Stamford, CT 06901
          (203) 203-273-5170
          Seegerkid2@aol.com