UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| WENDY WYLER, | : | |
| | : | CIVIL ACTION NO. |
| Plaintiff, | : | 3:12-CV-00097 (RNC) |
| | : | |
| V. | : | |
| | : | |
| CONNECTICUT STATE UNIVERSITY | : | |
| SYSTEM; SOUTHERN CONNECTICUT | : | |
| STATE UNIVERSITY; DAVID CHEVAN, | : | |
| Individually; STANLEY BATTLE, Individually; | : | |
| and JONATHAN IRVING, Individually | : | MARCH 14, 2013 |
| | : | |
| Defendants. | : | JURY TRIAL DEMANDED |

## THIRD AMENDED COMPLAINT

### A. PARTIES

1. Plaintiff Wendy Wyler is a citizen of the United States and the State of Connecticut.

2. Defendant Connecticut State University System, at all material times mentioned in this Complaint, was a public university and non-profit organization operating in part, on received federal grants and loans, and existing under the laws of the State of Connecticut with its system office located at 39 Woodland Street Hartford, CT 06105.

3. Defendant Southern Connecticut State University, at all material times herein, was one of four comprehensive universities within the Connecticut State University System, and is , located at 501 Crescent Street, New Haven, CT 06515.

4. Together, Defendants Connecticut State University System and Southern Connecticut State University will hereinafter be referred to collectively as "Defendant University."

5. Plaintiff, at all material times herein, was a student at Defendant University.

6. Upon information and belief, Defendant University was responsible for creating,

setting and enforcing its own general policies, appointing its chancellor of the system and the university presidents, developing policy controlling student life matters and assessing and maintaining the quality of student life.

7. At all material times herein, Defendant University appointed and/or hired the president of Defendant University, Defendant Stanley Battle (the "President") by the authority granted to it pursuant to Connecticut General Statutes §10a-89(a) (hereinafter referred to and included in the statement "law(s) of the State of Connecticut" where used) appointed and/or hired the chairman of the music department, Defendant Jonathan Irving (the "Chairman"); and Defendant David Chevan, a professor of the music department ("Chevan"). Defendant University was responsible for overseeing and supervising the acts, conduct, errors, and/or omissions of Defendant University's officers, servants, employees, administrators, agents, representatives and/or other designees in relation to any and all university conduct and or activity, including but not limited to, the acts, errors and/or omissions of Defendants President, Chevan and Chairman.

8. At all material times herein, Defendant President was responsible to oversee and supervise the acts, conduct, errors, and/or omissions of Defendant University's agents, servants, employees, administrators, representatives, and/or other designees including, but not limited to, those of Defendants Chevan and the Chairman.

9. At all relevant times herein, the President along with Defendant University, his/its agents, servants, employees, and/or designees acted under color of State law, and were responsible for the supervision, oversight, training, hiring, terminating, discipline, and/or retention of employees of Defendant University, and for the actions and/or conduct of employees in the course of performing their duties for said University, including Defendants President and Chevan.

10. At all relevant times herein, the Chairman, along with Defendant University, his/its agents, servants, employees, and/or designees acted at all times material hereto, acting under color of State law, were responsible for the supervision, oversight, training, hiring, terminating, discipline, and/or retention of members of the music department at Defendant University.

11. At all relevant times herein, Defendant Chevan was employed by Defendant University, and at all times material hereto he acted under color of law, in his capacity as an agent, servant, employee and/or designee of Defendants President, the Chairman and/or the University.

12. Together, Defendants Connecticut State University System, Southern Connecticut State University, Chevan, President and Chairman, will hereinafter be referred to as the "Defendants."

13. Together Defendants President and Chairman, will hereinafter be referred to as the "Supervising Defendants."

## B. JURISDICTION AND VENUE

14. This Court has original jurisdiction of this complaint espousing federal questions pursuant to 28 U.S.C. §1331; 28 U.S.C. §1343(a)(3) & (4); 42 U.S.C. §1983; and 20 U.S.C. § 1681; and has jurisdiction of any and all State claims made hereunder, pursuant to the principles of pendent jurisdiction.

15. Venue is proper in this Judicial District, pursuant to 28 U.S.C. Sec 1391(b) because events out of which Plaintiff's claims emanate occurred, and continue to occur, in the entire Judicial District of Connecticut; and pursuant to 18 U.S.C. Sec. 1965, because the Plaintiff's claims are directed against Defendants whom are employees and/or agents of the State of Connecticut.

## C. NATURE OF THE CASE

16. Defendant Chevan's duty as a professor of Defendant University was to interact with students as a professor and a mentor and in accordance with the policy of Defendant University.

17. Defendant Chevan's misconduct occurred on Defendant University's campus, during school hours, and was facilitated by Defendant University's resources, while Defendant Chevan was acting as a professor, and while Plaintiff was a student enrolled in Defendant Chevan's classes.

18. Between January 2011 and May 2011 (hereinafter referred to as the "Spring Semester"), Plaintiff was enrolled in two of Defendant Chevan's music classes at Defendant University.

19. During Plaintiff's enrollment and participation as a student in Defendant Chevan's classes, Chevan began instructing Plaintiff in her use of the saxophone.

20. During the Spring Semester, Defendant Chevan began to target Plaintiff through his suggestive actions, which included, but were not limited to, the following (hereinafter referred to as "Sexual Harassment"):

- (a) Arranging time to spend alone with Plaintiff in his office at Defendant University's campus;
- (b) Engaging in intimate conversations with Plaintiff regarding Defendant Chevan's problems with his wife and his previous affairs with another student;
- (c) Coming on to Plaintiff by directly describing her as "sexy", "gorgeous" and "attractive"; telling Plaintiff that his "love was unconditional";
- (d) Asking Plaintiff to hug Defendant Chevan after a performance, in front of other students;
- (e) Announcing to Plaintiff's classmates that he dedicated a specific song to Plaintiff;
- (f) Requesting to speak with Plaintiff alone in order to tell her that he found her "attractive," that he was "a very sensual person" and that he could

            feel "something between" them, "some kind of chemistry," and " "if I wasn't your professor and you my student, things could be different";

  (g)    Informing Plaintiff while in his office, through words and gestures, that he once had an affair with a student and that he could see himself "engaging in similar behaviors" with Plaintiff, and subsequently requesting that Plaintiff, accompany him to get a cup of coffee before rehearsal; and/or

  (h)    Leading Plaintiff to a very small storage room with no windows and only one door, insisting, upon Plaintiff's refusal, that she go inside, whereupon Plaintiff, believing the circumstances would worsen, complied, and Defendant Chevan closed the door, spread his legs and leaned against and blocked the only door, proposing the moment be used to engage in intimate relations. (hereinafter referred to as the "Storage Room Incident").

21.    In or around April 4, 2011, Plaintiff filed a report with the University via Human Resources (hereinafter "HR").

22.    On or around April 26, 2011, the Office of Diversity and Equity Programs ("ODEP") of Defendant University completed an investigation prompted by Plaintiff's complaint to HR, and found that Defendant Chevan violated Defendant University's Discrimination and Sexual Harassment Prevention Policy, and had created an intimidating, hostile, or offensive educational environment.

23.    During the course of the investigation conducted by ODEP, another student provided a written statement regarding Defendant Chevan's prior misconduct towards her. This student detailed suggestive remarks and inappropriate touching in Chevan's automobile, and upon information and belief, and stated that Chevan offered to smoke marijuana with her and invited her into his home to do "very physical things," after stating that his wife was away.

24.    During the course of the ODEP investigation, Defendant Chevan admitted to making numerous comments to Plaintiff, including his admission that he "transgressed boundaries" with Plaintiff, as well as the other student who came forward.

25.    At all material times, it was the Defendant University and Supervising Defendants'

5

policy that "[r]omantic, dating, or sexual relationships between an employee and a student over whom said employee exercises supervising or evaluative authority is prohibited at the Connecticut State University."

26. Upon information and belief, ODEP forwarded the case to Defendant University's Human Resources Department and to said Defendant's Provost to determine the appropriate disciplinary action, based on its finding that Chevan's "conduct had the purpose or effect of unreasonably interfering with work or academic performance or creating an intimidating, hostile, or offensive educational environment for [Plaintiff]. His conduct was persistent and pervasive and was reasonably perceived as offensive or hostile to constitute the type of sexual harassment referred to as 'hostile environment.'" [1]

27. Upon information and belief, the Defendant University and Supervising Defendants were notified of and/or provided a copy of the Report by ODEP, but neither failed to take substantial or reasonably appropriate action to terminate the effect of the sexual harassment, or Defendant Chevan, or otherwise seriously discipline him for his inappropriate conduct, instead downplaying the finding of pervasive "Sexual Harassment," and exhibiting deliberate indifference in the face of the obvious effects of Chevan's continued presence and teaching privileges, upon the Plaintiff, who had to continue her studies on the same campus as Chevan.

28. Upon information and belief, when Plaintiff contacted Defendant Chairman regarding her concern, that although ODEP might recommend action, it would be met with indifference by Defendants and Defendant Chevan would be permitted to continue teaching, the aforesaid indifference having been specifically exhibited in an email from the Chairman to the

---

[1] Section "(c)" is the definitional section of the ODEP Report, defining "hostile environment" as "such conduct [that] has the purpose or effect of unreasonably interfering with employment opportunities, work or academic performance or creating an intimidating, hostile, or offensive work or educational environment. The conduct must typically be persistent and pervasive and be reasonably perceived as offensive or hostile to constitute this type of sexual harassment referred to as 'hostile environment.'"

Plaintiff, wherein the former responded to the concern by stating: "welcome to the world of academia!"

29. At all material times, none of the Defendants kept the Plaintiff informed of the investigation, or of steps taken to abate the sexual harassment.

30. Upon information and belief, the University and Supervising Defendants, had knowledge of past Sexual Harassment by Defendant Chevan and/or his proclivity to engage in inappropriate sexually–oriented conduct with his female students. prior to April 4, 2012, when the Plaintiff filed her complaint, but either ignored and/or exercised a deliberate indifference to same.

31. Upon information and belief, although the Sexual Harassment and/or inappropriate sexual proclivities of Defendant Chevan were (i) brought numerous times to the attention of employees and administrators of the University, including the Chairman and the President, and (ii) observed by other students, employees, Defendant Chevan was permitted to continue working with the Plaintiff and other students and continues to work at Defendant University to this day.

32. In spite of the Sexual Harassment finding by ODEP, neither the University nor the Supervising Defendants took appropriate action, in spite Plaintiff's numerous expressed concerns that her educational experience would be hampered.

33. At all material times herein, Plaintiff had a right to a safe educational environment, free from Sexual Harassment by Chevan, and a hostile educational environment as a result of Chevan's conduct and the failure of the University or the Supervising Defendants to adequately remedy the sexual harassment, in direct violation of Title IX.

34. At all material times, the University and the Supervising Defendants, acting individually or in concert with one another, abused the authority vested in them as

University officials, resulting in injury to the Plaintiff.

### COUNT 1: VIOLATION OF CIVIL RIGHTS UNDER TITLE IX OF THE EDUCATION AMENDMENTS OF 1972, 20 U.S.C. § 1681

*(Against Defendant University)*

35. Plaintiff repeats and realleges the allegations contained in Paragraphs 1 through 34 of this Complaint, as if the same were fully set forth herein.

36. Defendant University receives federal funding for its operation as a State University and is subject to governmental regulation, including but not limited to those related to Title IX of the Education Acts of 1972, which provides, "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance ..." Section 901(a) of Title IX of the Education Amendments of 1972.

37. Title IX requires that all schools receiving federal funding, have written policies prohibiting sexual harassment, and that all schools establish procedures to investigate and remedy complaints of said harassment, and further, that schools receiving federal funding respond immediately and effectively to student complaints of sexual harassment.

38. At all material times, Chevan used, capitalized on, and relied upon, his actual authority as the Plaintiff's professor; acting under color of law, he used his status as a professor, during class and/or school related activities, on or about the University campus, in sexually harassing the Plaintiff, who justly relied upon Chevan's apparent authority and status in electing to enroll in classes he taught, engaging in music related school activities, and meeting with him in his office and elsewhere on campus pursuant to his requests.

39. Defendant University knew or should have known their obligations under Title IX, and that in light of its finding that Defendant Chevan's conduct constituted sexual

harassment, and a hostile educational environment in violation of Title IX, that the Plaintiff was the subject of serious harassment.

40. Upon information and belief, Defendant University had actual and/or constructive knowledge of the Sexual Harassment and similar inappropriate sexually-oriented activities with his students by Defendant Chevan in the past, as well as the authority and power to protect Plaintiff from the such conduct, discrimination, and post harassment hostile environment, but failed to take immediate, effective, remedial steps, exhibiting clear indifference to Defendant Chevan's prior and continuing misconduct, and its effect on the Plaintiff's access to education.

41. ODEP found that Chevan had created an intimidating, hostile, or offensive educational environment, and his conduct qualified as sexual harassment under university policies, but Defendant University and the Supervising Defendants took no immediate or adequate remedial action in light of this finding.

42. Defendant University failed to comply with the requirements of Title IX and their own related guidelines in the following ways:

    (a)    Failing to properly investigate or act upon Plaintiff's claim;

    (b)    Failing to notify law enforcement of Defendant Chevan's conduct;

    (c)    Failing to discipline Defendant Chevan in a meaningful or appropriate manner;

    (d)    Downplaying the severity of the Sexual Harassment, exhibiting a deliberate indifference to the conduct by Chevan;

    (e)    Responding to the incident in a manner that negatively affected the Plaintiff but not Defendant Chevan;

    (f)    Failing to effectively respond to the Sexual Harassment, and communicate the status and outcome of the discipline received, if any, to the Plaintiff;

    (g)    Failing to have procedures in place to prevent, investigate, respond to, or

terminate any incidences of sexual harassment; and

(h) Failing to provide an adequate and immediate remedy commensurate with the Title IX violation found to have occurred.

43. As a direct and proximate result of Defendant University's failure to comply with Title IX, Plaintiff was forced to participate in a hostile and fearful educational environment, and subjected to severe and pervasive sexual harassment which interfered in her right to an education, the same characterized by (a) repeated unwanted sexual advances, (b) requests to engage in personal sexual relationships with Defendant Chevan, and (c) verbal and physical conduct of a sexual nature, for which no remedy was afforded to the Plaintiff.

44. As a direct and proximate result of Defendants' deliberate indifference, and failure to remediate the sexual harassment, Plaintiff grew so uncomfortable and anxious that she withdrew from Defendant Chevan's classes, and sought treatment with a private counselor.

45. As a direct and proximate result of the foregoing actions of Defendant University, its agents, servants, employees and/or other representatives, the Plaintiff was discriminated against in the context of her education.

46. As a direct and proximate result of Defendants' conduct, Plaintiff began arriving late for classes, missing classes, dropping scores, and eventually withdrew from Defendant Chevan's courses, the small ensembles, blues band, and Latin jazz band, and suffered severe mental and emotional distress, manifested by such physical and other symptoms as: sleeplessness, anxiety, stress, fright, nervousness, fatigue, depression, nausea, headaches, hypersensitivity, and crying.

47. As a further result thereof Plaintiff has been unable to carry out all of the functional activities in her life in the same and/or similar manner as she did prior to sustaining said injuries, including but not limited to, maintaining normal trusting relationships with professors and actively participating in academic social situations with peers.

48. As a direct and proximate result of the Defendants' conduct, the Plaintiff has suffered, and will continue to suffer damages.

## COUNT 2:  42 U.S.C. § 1983

*(Against defendants Chevan, Battle, and Irving, Individually)*

49. Plaintiff repeats and realleges the allegations contained in Paragraphs 1 through 48 of Count One in this Complaint, as if the same were fully set forth herein.

50. At all material times Chevan and the Supervising Defendants were imbued with the authority granted to them as professors, officials, chairman, presidents and/or administrators at a State University, which is constituted, enabled, created, and regulated, by the laws of the State of Connecticut.

51. At all material times defendants Chevan and the Supervising Defendants acted under color of state law, and their conduct deprived Plaintiff of rights guaranteed under the Fourteenth Amendment, which prohibits, inter alia, the denial to any person the equal protection of the laws.

52. The conduct of aforesaid Supervising Defendants in failing to adequately remedy and take Plaintiff's claims seriously, was consistent with a customary and widespread practice of feigned ignorance and avoidance in the University's dealing with sexual harassment claims.

53. The aforesaid defendants, acting under color of State law, acted with deliberate indifference toward the Plaintiff's rights, her Sexual Harassment claim and condoned the violation of Plaintiff's legal rights, thereby depriving Plaintiff of her rights privileges or immunities secured under the law of the United States.

54. By engaging in, and/or failing to adequately remedy the Sexual Harassment the Plaintiff was:  (1) placed in a hostile and/or oppressive educational environment, (2) forced to drop classes, (3) forced to forego educational opportunities, and (4) forced to stop

participating in school related extra curricular music activities, all in derogation of liberty rights and privileges secured unto her under the Due Process Clause of the Fourteenth Amendment.

55. The Supervising Defendants failed to act appropriately, according to established State procedures for dealing with claims of harassment of a female student, who was discriminated against, and subjected to differential treatment by Chevan based on her gender.

56. In spite of Plaintiff having been targeted because of her gender, and having been declared by ODEP to have suffered sexual harassment causing a hostile and/ or oppressive educational atmosphere, the Supervising Defendants failed to remedy the harm, and thereby condoned and facilitated the same, in further spite of both State law provisions and University Guidelines which require otherwise.

57. The conduct of the Supervising Defendants in failing to redress the harm suffered by the Plaintiff, and facilitating the continuation of Plaintiff's education in a hostile or oppressive environment is conscience shocking, arbitrary and capricious, amounting to a deprivation of Plaintiff's Fourteenth Amendment due process rights to liberty and equal protection.

58. The actions of the Supervising Defendants constituted a deprivation of Plaintiff's Fourteenth Amendment rights to liberty and equal protection.

59. As a direct and proximate result of Defendants' conduct, Plaintiff suffered severe mental and emotional distress, manifested by such physical and other symptoms as: sleeplessness, anxiety, stress, fright, nervousness, fatigue, depression, nausea, headaches, hypersensitivity, and crying; and Plaintiff, began arriving late for classes, missing classes, dropping scores and eventually withdrawing from Defendant Chevan's courses, the small ensembles, blues band, and Latin jazz band.

60. As a further result thereof Plaintiff has been unable to carry out all of the functional activities in her life in the same and/or similar manner as she did prior to sustaining said injuries, including but not limited to, maintaining normal trusting relationships with professors and actively participating in academic social situations with peers.

61. As a direct and proximate result of the Defendants' conduct, the Plaintiff has suffered, and will continue to suffer damages.

## COUNT 3: FALSE IMPRISONMENT

### (*Against Defendant Chevan)*

62. Plaintiff repeats and realleges the allegations contained in Paragraphs 1 through 61 of this Complaint, as if the same were fully set forth herein at length.

63. Defendant Chevan, without lawful excuse, privilege, justification, or statutory authority, performed acts as alleged in Paragraph 20 of this Second Amended Complaint, more specifically the Storage Room Incident, against Plaintiff's will, and without her consent, which resulted in the false and unlawful imprisonment of the Plaintiff.

64. Defendant Chevan led Plaintiff to a very small storage room with no windows and only one door, closing the door behind her and blocking the only exit by spreading his legs and leaning up against the only door.

65. Plaintiff was aware of the restraint, confinement, or detention and had little, if any, ability to defend herself against Defendant Chevan's conduct.

66. Defendant Chevan committed such misconduct intentionally and/or with knowledge to a substantial certainty that such detention, confinement, and restraint of Plaintiff, would cause such detention, confinement, and/or restraint of Plaintiff in a restricted area for an appreciable length of time, and he accomplished the same by exercise of express and/or implied force.

67. Defendant Chevan knew or should have known that his conduct during the Storage Room Incident involved the unreasonable risk of causing long-term mental and emotional distress.

68. The damages, losses and injuries, sustained by Plaintiff, were directly and proximately caused by Defendant Chevan's intentional, willful, wanton, reckless, malicious, careless and/or negligent conduct.

69. As a direct and/or proximate result of Defendant Chevan's conduct, Plaintiff was caused to suffer fright, extreme humiliation, anxiety, embarrassment, anguish, alienation from her classmates and physical illness when attending Defendant Chevan's classes.

70. As a further result thereof, Plaintiff suffered severe mental and emotional distress, manifested by such physical and other symptoms as: sleeplessness, anxiety, stress, fright, nervousness, fatigue, depression, nausea, headaches, hypersensitivity, and crying; and Plaintiff, began arriving late for classes, missing classes, dropping scores and eventually withdrawing from Defendant Chevan's courses, the small ensembles, blues band and Latin jazz band.

71. As a further result thereof Plaintiff has been unable to carry out all of the functional activities in her life in the same and/or similar manner as she did prior to sustaining said injuries, including but not limited to, maintaining normal trusting relationships with professors and actively participating in academic social situations with peers.

72. Plaintiff has and will continue to suffer damages well into the future, as a direct and proximate result of Defendant Chevan's conduct.

### COUNT 4: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

*(Against Defendant Chevan Individually)*

73. Plaintiff repeats and realleges the allegations contained in Paragraphs 1 through 72 of this Complaint, as if the same were fully set forth herein.

74. At all material times, Chevan acted individually, imbued with the authority granted to him as a professor at a State University, which is constituted, enabled, created, and regulated, by the laws of the State of Connecticut.

75. Chevan engaged in conduct against Plaintiff, which was extreme and outrageous, exceeding all bounds of usual Toleration in society, including, but not limited to:

- (a) Arranging time to spend alone with Plaintiff in his office at Defendant University's campus;

- (b) Engaging in intimate conversations with Plaintiff regarding Defendant Chevan's problems with his wife and his previous affairs with another student;

- (c) Coming on to Plaintiff by directly describing her as "sexy", "gorgeous" and "attractive"; telling Plaintiff that his "love was unconditional";

- (d) Asking Plaintiff to hug Defendant Chevan after a performance, in front of other students;

- (e) Announcing to Plaintiff's classmates that he dedicated a specific song to Plaintiff;

- (f) Requesting to speak with Plaintiff alone in order to tell her that he found her "attractive," that he was "a very sensual person" and that he could feel "something between" them, "some kind of chemistry," and " "if I wasn't your professor and you my student, things could be different";

- (g) Informing Plaintiff while in his office, through words and gestures, that he once had an affair with a student and that he could see himself "engaging in similar behaviors" with Plaintiff, and subsequently requesting that Plaintiff, accompany him to get a cup of coffee before rehearsal; and/or

- (h) Leading Plaintiff to a very small storage room with no windows and only one door, insisting, upon Plaintiff's refusal, that she go inside, whereupon Plaintiff, believing the circumstances would worsen, complied, and Defendant Chevan closed the door, spread his legs and leaned against and blocked the only door, proposing the moment be used to engage in intimate relations. (hereinafter referred to as the "Storage Room Incident").

76. The acts and/or conduct of Chevan caused Plaintiff to suffer severe emotional distress.

77. The acts of Chevan, causing said severe emotional distress, were committed intentionally, willfully, wantonly, and/or in reckless disregard for the emotional wellbeing of Plaintiff, and to the reasonably foreseeable emotional, psychological, and developmental injuries that would be suffered by Plaintiff.

78. As a direct and/or proximate result of Chevan's conduct, Plaintiff was caused to suffer extreme humiliation, anxiety, embarrassment, anguish, alienation from her classmates and physical illness when attending Defendant Chevan's classes.

79. As a further result thereof, Plaintiff suffered severe mental and emotional distress, manifested by such physical and other symptoms as: sleeplessness, anxiety, stress, fright, nervousness, fatigue, depression, nausea, headaches, hypersensitivity, and crying; and Plaintiff, began arriving late for classes, missing classes, dropping scores and eventually withdrawing from Defendant Chevan's courses, the small ensembles, blues band and Latin jazz band.

80. As a further result thereof Plaintiff has been unable to carry out all of the functional activities in her life in the same and/or similar manner as she did prior to sustaining said injuries, including but not limited to, maintaining normal trusting relationships with professors and actively participating in academic social situations with peers.

81. At all material times Chevan knew, or should have known, that emotional distress would likely ensue as a result of the Sexual Harassment.

82. Plaintiff has and will continue to suffer damages well into the future, as a direct and proximate result of Defendants' conduct.

**WHEREFORE**, Plaintiff prays that this Court:

a. Issue a Permanent Injunction enjoining Defendant Chevan from teaching upon any State University Campus, and from entering upon or remaining at any campus, in any capacity whatsoever, during any time which the Plaintiff is exercising her right to pursue an education in the Sate University System.

b. Award general, compensatory and consequential damages as against Defendants;

c. Award actual and punitive damages against the Defendants.

d. Award Plaintiff any and all reasonable Attorney's fees;

e. Award Attorney's fees under 42 U.S.C. 1988;

f. Award Costs under 42 U.S.C. 1988; and

g. Award any other further relief, which this Court deems just and proper.

Plaintiff demands a trial by jury on all counts.

                      **THE PLAINTIFF**
                      **WENDY WYLER**

By:
    /s/ Jeffrey S. Bagnell
    Jeffrey S. Bagnell (ct18983)
    Scott R. Lucas (ct00517)
    Lucas Bagnell Varga LLC
    2425 Post Road, Suite 200
    Southport, CT 06890
    (203) 227-8400
    (203) 227-8402 (fax)
    jbagnell@lbv-law.com
    slucas@lbv-law.com

*Attorneys for Plaintiff*

## **CERTIFICATION**

       This is to certify that on this 14th day of March 2013 a copy of the foregoing was filed electronically [and served by mail on anyone unable to accept electronic filing]. Notice of this filing will be sent by e-mail to all parties, as listed below, by operation of the Court's electronic filing system [or by mail to anyone unable to accept electronic filing]. Parties may access this filing through the Court's system.

Linsley J. Barbato, Esq.
Assistant Attorney General
55 Elm Street
P.O. Box 120
Hartford, CT 06141-0120
Tel: (860) 808-5160
Fax: (860) 808-5384
Linsley.barbato@ct.gov

David R. Schaefer, Esq.
Brenner, Saltzman & Wallman
271 Whitney Ave.
New Haven, CT 06511-1746
203-772-2600
Fax: 203-562-2098
dschaefer@bswlaw.com

                                                           /s/ Jeffrey S. Bagnell
                                                           Jeffrey S. Bagnell (ct18983)
                                                           Lucas Bagnell Varga LLC
                                                           2425 Post Road, Suite 200
                                                           Southport, CT 06890
                                                           (203) 227-8400
                                                           (203) 227-8402 (fax)
                                                           jbagnell@lbv-law.com